ERIE RAILROAD COMPANY, Plaintiff, *v.* THE WESTERN UNION TELEGRAPH COMPANY, Defendant.

First Department, June 21, 1934.

*H. A. Taylor* of counsel [*M. B. Pierce*, attorney], for the plaintiff.

*Francis R. Stark* of counsel [*Francis N. Whitney* with him on the brief; *Francis R. Stark* and *R. H. Overbaugh*, attorneys], for the defendant.

MERRELL, J.  The question in controversy here is as to whether the plaintiff may require the defendant to pay to the plaintiff the sum of $24,768, with interest at six per cent per annum from December 26, 1924, or any part thereof, and the sum of $27,388.60, with interest thereon at six per cent per annum from January 8, 1925, or any part thereof, said sums representing taxes assessed by the United States government through the Treasury department and the Commissioner of Internal Revenue in the amount. of $24,768 upon such messages transmitted for the plaintiff by the defendant pursuant to and in accordance with a contract between the parties for the period January, 1921, to January, 1923, and $27,388.60 upon such messages so transmitted for the plaintiff by defendant pursuant to and in accordance with said contract for the period February, 1923, to June, 1924.

The plaintiff owned and operated a system of railroads in the States of New York, New Jersey, Pennsylvania and Ohio, and during all the times mentioned in the agreed statement of facts was engaged as a common carrier by railroad in the transportation of persons and property in interstate commerce, and in the proper conduct of its business as such common carrier had many telegraph messages transmitted for it by the defendant under and pursuant to the terms of a contract between the parties, dated September 25, 1907.  At all the times mentioned in the agreed statement of facts the defendant operated a telegraph system throughout the various States of the United States and, by means of its cables, a cable system to various points outside of the United States.

The plaintiff demanded of the defendant that it pay said taxes assessed as aforesaid, with which demand the defendant refused to comply.  Upon such refusal of the defendant to pay such taxes, the plaintiff, under duress and with protest and to avoid threatened penalties and the seizure of its properties under warrant of distraint, or other process, paid, on December 26, 1924, and January 8, 1925,

respectively, the amount of said taxes to the Collector of Internal Revenue for the Second District of New York. On September 25, 1907, the plaintiff and the defendant entered into a contract in writing, a copy of which is annexed to the agreed statement of facts herein. It is recited in said contract that the plaintiff now owns, leases or controls certain railroads intended to be covered by said contract in territory generally described as lying east of Lake Michigan. It is also recited in said contract that the defendant owns certain telegraph poles, wires and appurtenances situate along the right of way and along the railroads operated by plaintiff. The contract contains the following recital: " Whereas it is desired that an agreement be entered into between the parties hereto covering all railroads and branches or extensions now owned, leased or controlled, and also all branches or extensions thereof and all minor railroads hereafter owned, leased or controlled by the Railroad Company in said territory, granting to the Telegraph Company the right to maintain and operate telegraph lines thereon, and providing for the maintenance and operation of the same by the Telegraph Company, all on the terms and conditions herein provided." With reference to the question here in dispute the contract then provides as follows: " The Telegraph Company agrees to pay all taxes and assessments lawfully assessed or imposed upon or on account of the telegraph property and telegraph lines or business covered by this agreement, of both parties hereto, and in case the same shall be assessed against the Railroad Company the Telegraph Company agrees to reimburse the Railroad Company therefor, and no part of said taxes will be paid by the Railroad Company." It is the contention of plaintiff that by virtue of said provision of the contract between the parties, the defendant is liable to the plaintiff for the taxes and assessments imposed and paid by plaintiff. The question presented is as to whether or not the tax in question was a tax on account of the " telegraph business " within the terms of the contract between the parties.

We are of the opinion that such tax was not a tax on the telegraph business of the railroad company. The tax in question was not imposed on the telegraph company but on its customer. The tax is not a tax on the telegraph business of the railroad company. It is a tax primarily upon the railroad business of the plaintiff, the cost of which is reported by the railroad company as a part of the operating expense of running the railroad. It cannot be urged that the provision in the contract that the " telegraph * * * business * * * of both parties " must mean something, and that, since the railroad does no telegraph business in the ordinary sense, the term " telegraph business " of the

railroad company must refer to messages which the railroad company sends as the telegraph company's customer, because the contract itself refers to the " telegraph business of both companies," and plainly shows the contracting parties, in using that term, did not have in mind anything with regard to the telegraph messages sent and paid for by the railroad. We do not think it is necessarily to be implied that the railroad was supposed to have any telegraph business at all subject to tax, apart from the possibility that some assessment might be made against the railroad company on the theory that it was a joint proprietor or joint operator of the business by reason of the fact that it, to some extent, furnished facilities and personnel and shared in the receipts. It seems to us perfectly plain that when the plaintiff sends and pays for messages to be transmitted by the defendant, that, with reference thereto, the defendant is engaged in the telegraph business in transmitting, and that the plaintiff is engaged in the railroad business in sending the messages, and that, therefore, the tax imposed by law on the sender is a tax on the railroad business and not a tax on the telegraph business. The obligation of the defendant under the contract was confined to " business covered by this agreement." There was nothing included in the tax clause, except business along the railroads mentioned in the territory in which they operated. Plaintiff contends that the tax in question on the transmission of telegrams is a tax on the defendant's business covered by the agreement. We do not think plaintiff is correct in such contention. The messages upon which the tax was levied were not plaintiff's telegraph business, but were plaintiff's railroad business, and the expense of sending said messages constituted a deduction from the gross income in plaintiff's tax return covering railroad operations. The telegraph business of the plaintiff, if any, as used in the contract between the parties, was the telegraph business done by the railroad operators over railroad wires. The agreed statement of facts clearly shows that plaintiff is engaged, to some extent, in the telegraph business in sending messages over its own wires entirely separate and distinct from the wires of the defendant. Originally the plaintiff operated a commercial telegraph line over its wires along its right of way.

We are, therefore, of the opinion that the taxes in question were properly assessable against the plaintiff and were paid by it as an operating expense of plaintiff, and that, therefore, judgment should go in favor of the defendant, without costs.

FINCH, P. J., MARTIN, O'MALLEY and UNTERMYER, JJ., concur.

Judgment directed in favor of the defendant, without costs. Settle order on notice.